1    **WO**

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9   United States of America,              )   No. CIV-04-1580-PHX-PGR (GEE)
                                            )       CR-01-807-PHX-PGR
10           Plaintiff-Respondent,          )
                                            )   **REPORT AND**
11  vs.                                     )   **RECOMMENDATION**
                                            )   **(second)**
12  Daniel Michael Angelo Godoy,            )
                                            )
13           Defendant-Movant.              )
                                            )
14  _____        )

15

16          On August 2, 2004, Daniel Michael Angelo Godoy, an inmate currently confined at the

17  Federal Correctional Institution in Littleton, CO, filed the instant Motion to Vacate, Set Aside

18  or Correct Sentence pursuant to Title 28, United States Code, Section 2255.  [doc. #633][1]

19  Godoy claims his counsel was ineffective when he failed to file a timely notice of appeal

20  following Godoy's plea of guilty.  *Id.*

21          Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate

22  Judge Edmonds for a report and recommendation.  An evidentiary hearing on the motion was

23  held on Monday, April 23, 2007.  The Magistrate Judge recommends the District Court, after

24  its independent review of the record, enter an order denying the motion.  It is time-barred.

25

26

27  _____

28      [1] Criminal case record number.

1

<u>Summary of the Case</u>

2      On November 15, 2002, the defendant, Daniel Michael Angelo Godoy, pleaded guilty

3  to one count of Conspiracy to Possess with Intent to Distribute Marijuana in violation of 21

4  U.S.C. § 841(a)(1) and § 846, and two counts of Possession with Intent to Distribute Marijuana

5  in violation of 21 U.S.C. § 841(a)(1) in accordance with a written plea agreement.

6  (Government's response, p. 2.)  In the plea agreement, the parties agreed the defendant would

7  receive a sentence of between 188 and 200 months' imprisonment.  *Id.*, p. 2.; Exhibit A.  The

8  defendant further agreed to waive "any right to raise on appeal or to collaterally attack any

9  matter pertaining to this prosecution and sentence if the sentence imposed is consistent with the

10  terms of this agreement."  *Id.*, p. 2.  On March 20, 2003, the defendant was sentenced to 192

11  months' imprisonment on count one, 192 months' imprisonment on count two, and 60 months

12  imprisonment on count three with all terms to be served concurrently.  *Id.*, pp. 2-3  The

13  presentence report calculated the defendant's guideline range as 360 months to life.  *Id.*, p. 2.

14  The District Court entered judgment on March 21, 2003.  *Id.*, p. 3.

15      At the sentencing, Godoy informed his attorney, J. Scott Halverson, that he wanted to

16  pursue all appellate remedies. (Defendant's motion, attachment, counsel's affidavit.)  Halverson

17  assumed Godoy had waived his right to file a direct appeal and did not file a timely notice of

18  appeal within ten days from the date of judgment.  *Id.*

19      On April 16, 2003, Halverson filed a motion to withdraw and a motion for appointment

20  of new counsel. [Hearing, Exhibit B]  He had come to believe he made a mistake by failing to

21  file a timely notice of appeal. [Tr., p. 13][2]  He believed new counsel was needed to determine

22  whether he, the trial counsel, had been ineffective and prepare Godoy's post-conviction relief

23  action. [Tr., p. 12.]

24      On April 22, 2003, Halverson filed an untimely notice of appeal and a motion for

25  extension of time to file a notice of appeal.  [Hearing, Exhibits D, E]  Halverson admitted he

26

27  _____

28      [2]  Transcript of hearing held on April 23, 2007.

1  failed to file a timely notice of appeal and blamed this mistake on his inexperience in federal
2  court. *Id.*

3          That same day, the trial court granted Halverson's motion to withdraw and denied his
4  motion for appointment of counsel. [Hearing, Exhibit C] Halverson was unaware of this order
5  when he filed his untimely notice of appeal and motion for extension of time. [Tr., p. 22]

6          Shortly after Godoy was sentenced, Halverson met with Godoy in the Maricopa County
7  Jail.  [Tr., pp. 18, 20, 25] He told Godoy he failed to file a timely appeal and apologized
8  profusely. [Tr., pp. 18, 20, 37]  He explained how badly he felt and expressed his hope that the
9  error would not cause Godoy any prejudice. [Tr., p. 17]  He assured Godoy he would be honest
10 and truthful if, in the future, he was called upon to explain what happened. [Tr., p. 17]  He told
11 Godoy he had filed a late notice of appeal and a motion for extension of time to file the appeal.
12 [Tr., pp. 21, 22]  He further explained that he filed a motion to withdraw and for appointment
13 of new counsel. [Tr., pp. 20, 37]

14         Godoy was transferred to the United States Penitentiary in Lompoc, California. [Tr., p.
15 29]  The weekend of the 5th of May, Godoy called Halverson on the telephone.   [Tr., pp. 29,
16 39]  He asked Halverson if there was any new information about the appeal.  [Tr., pp. 39-40.]
17 There was none. *Id.*

18         On May 19, 2003, the trial court denied the motion for extension of time to file appeal.
19 [Hearing exhibit G]

20         Godoy heard nothing further from the courts.  In November of 2003, he called Halverson
21 to request his file. [Tr., pp. 30, 41]

22         In May of 2004, Godoy contacted a "jailhouse lawyer" who offered to check on Godoy's
23 appeal. [Tr., p. 30-31]  He apparently discovered the Ninth Circuit dismissed the appeal on July
24 28, 2003. [Tr., p. 31]; [Hearing, Exhibit H]  He then told Godoy they needed to file his petition
25 "before July." [Tr., p. 31]  Godoy prepared his petition and signed it on July 19, 2004. [Tr., p.
26 33]  In the petition, he asserted he "did not know that counsel's notice of appeal was untimely
27 until approximately May of 2004." [Tr., p. 33]  He deposited the petition in the prison mail that
28 evening. [Tr., p. 34]  Unfortunately, it was returned by the post office because it was sent to the

1  wrong address. [Tr., p. 34] Godoy found the correct address and immediately re-mailed the

2  petition. [Tr., p. 35]

3      On August 2, 2004, the instant petition was filed. Godoy argues his counsel was

4  ineffective for failing to file a timely appeal. The government filed a response on November

5  10, 2004. It argues the motion is untimely because it was filed more than one year after the

6  conviction became final. The government further argues, in the alternative, the motion should

7  be denied on the merits.

8      On April 15, 2005, the Magistrate Judge recommended the District Court deny the

9  motion because counsel's performance, assuming it was deficient, did not cause Godoy

10  prejudice because he waived his right to appeal. The Magistrate Judge did not reach the issue

11  of timeliness. The District Court rejected the report and recommendation relying on the Ninth

12  Circuit opinion in *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir. 2005) (issued after

13  the report and recommendation) holding that failure to file an appeal after being expressly

14  instructed to do so was ineffective representation per se even if the defendant waived his right

15  to appeal. The District Court referred the motion again to the Magistrate Judge to consider the

16  issue of timeliness.

17      The parties were given an opportunity to re-brief the issue of timeliness. [docs. #682,

18  #690] The court then appointed counsel for Godoy and held an evidentiary hearing on Monday,

19  April 23, 2007. Godoy filed a supplemental memorandum on June 18, 2007.

20

21      Discussion

22      A motion to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255 provides

23  a remedy for those prisoners

24      in custody under sentence of a court established by Act of Congress claiming the
        right to be released upon the ground that the sentence was imposed in violation
25      of the Constitution or laws of the United States, or that the court was without
        jurisdiction to impose such sentence or that the sentence was in excess of the
26      maximum authorized by law or is otherwise subject to collateral attack . . .

27  28 U.S.C. § 2255.

28      The motion is subject to a one-year statute of limitations which runs from the latest of

- 4 -

(1)  the date on which the judgment of conviction becomes final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Ordinarily, the one year statute of limitations begins to run when the judgment becomes final.  28 U.S.C. § 2255(1).  Here, Godoy's judgment became final ten days after the court entered judgment on March 21, 2003, when the time for filing a timely notice of appeal expired. *See United States v. Schwartz*, 274 F.3d 1220, 1223 n. 1 (9th Cir. 2001);  *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004).

Godoy, however, claims his counsel improperly failed to file a timely appeal.  His statute of limitations, therefore, began to run when the facts supporting his claim could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2255(4); *Wims v. United States*, 225 F.3d 186, 188, 190-91 (2nd Cir. 2000) (applying section 2255(4) where the defendant claimed his attorney improperly failed to file an appeal).  "Section 2255(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run." *Id.* "Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final, see § 2255(1), to the later date on which the particular claim accrued." *Id.* "[T]he date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [the defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement . . . ." *Id.* at 190-91.

In this case, had Godoy exercised due diligence, he would have uncovered the facts supporting his claim by the end of June, 2003.  Assuming arguendo his petition was properly

filed on July 19, 2004, it is time-barred.  *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003)  (A pro se prisoner's petition is deemed filed when the prisoner delivers it to prison authorities for mailing.).

Godoy knew shortly after he was sentenced that Halverson failed to file a timely notice of appeal.  The limitations period did not begin at this time, however, because Halverson also told Godoy he had filed a motion for an extension of time with the trial court.  If this motion were granted, Halverson's mistake would be of no consequence.  Accordingly, Godoy's limitations period began when, with the exercise of due diligence, he would have discovered this motion was denied by the trial court.  *But see, United States v. Burton*, 2007 WL 320257, *3 (E.D.Pa. 2007)  (starting the limitations period when the defendant knew counsel failed to file a timely appeal even though he filed a pro se request for leave to file an out of time appeal).

Godoy called Halverson the weekend of the 5th of May, 2003 asking for news about his appeal.  Halverson, however, had nothing new to report.  This was because the trial court had not yet addressed his motion for an extension of time.  The court finally denied the motion on May 19, 2003.

If Godoy were exercising due diligence, he would have called Halverson again either in late May or early June and inquired about the status of his case.  He had Halverson's telephone number and knew how to make a call from prison.  By this time, Halverson was no longer Godoy's attorney.  Nevertheless, he was apparently willing to talk to Godoy and answer his questions.

This is not a case where an appeal is timely filed and the defendant is justified in doing nothing further until the appeals court informs him of its decision.  This is a case where a critical mistake was made, and it remained to be seen whether or not this mistake was harmless.  Godoy knew Halverson filed a late notice of appeal.  He also knew Halverson filed a motion for extension of time which was pending before the trial court.  If Godoy were exercising due diligence he would have stayed in contact with Halverson until he determined whether or not the motion for an extension of time had been granted.

The court order denying the motion was issued on May 19, 2003.  It would have been a simple matter for Halverson to check the court file and determine the status of the motion had Godoy asked him to do so.  If Godoy had been diligent, he would have learned by late June that the motion for extension of time had been denied.

The limitations period began to run by the end of June, 2003.  Assuming arguendo Godoy's petition was properly filed on July 19, 2004, it is time-barred.

Godoy maintains he first became aware of his counsel's error in May of 2004. (Defendant's supplemental reply, p. 2.; doc. # 690.)  He argues the limitations period began to run on this date.  Godoy, however, misunderstands the test.  The period begins when counsel's error would have become apparent upon the exercise of due diligence, not when Godoy actually became aware of his counsel's error.

In the alternative, Godoy argues the limitations period should be equitably tolled while he waited to hear from the courts.  "A litigant seeking equitable tolling of the one-year AEDPA limitations period bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006).  "The threshold necessary to trigger equitable tolling under the AEDPA is very high, lest the exceptions swallow the rule." *Id.*

In this case, however, Godoy was not pursuing his rights diligently.  (See above.) Accordingly, the limitations period was not equitably tolled while Godoy waited for the courts to tell him his delayed appeal was denied.

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255.  [doc. #633]

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 10 days of being served with a copy of this report and recommendation.  If objections are not

timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

    The Clerk is directed to send a copy of this report and recommendation to all parties.

    DATED this 27th day of July, 2007.

_____
Glenda E. Edmonds
United States Magistrate Judge

- 8 -